STROUD, Judge.
 

 *113
 
 Wife appeals from an equitable distribution order valuing the "marital portion" of a townhome she owned prior to marriage at $ 90,000.00 and distributing it to Wife and distributing $ 90,000.00 of marital debt on the same property to her. Because the parties stipulated in the pretrial order that the townhome was Wife's separate property, the trial court erred by classifying part of its value as marital property and making its distribution based upon this classification and valuation. We reverse and remand.
 

 *114
 
 I. Background
 

 Husband and Wife were married on 6 September 2003 and separated on 21 March 2015. On 2 July 2015, Wife filed a complaint against Husband with claims for equitable distribution with an unequal division in her favor, postseparation support, and alimony.
 
 [1]
 
 Husband answered and joined in Wife's request for equitable distribution but requested an unequal division in his favor. A pretrial order was entered on 13 November 2017 with detailed schedules of property and issues in contention. In this order, as relevant to the issues on appeal, Husband and Wife stipulated that the "Townhome" with a "Net Value" of "186,000.00" was the separate property of Wife.
 
 [2]
 
 At trial, the parties agreed that the balance of the debt secured by the townhome as of the date of separation was $ 90,000.00, all of which was incurred during the marriage, but they did not stipulate to the classification and distribution of this debt. Wife contended the debt was marital, and Husband contended that at least some portion of the debt was Wife's separate debt.
 

 On 1 December 2017, the trial court entered the equitable distribution order. The trial court considered the parties' contentions for unequal distribution but determined that an equal distribution was equitable. The trial court determined that the "marital component" of the townhome was $ 90,000.00 and distributed it as marital property to Wife and distributed the $ 90,000.00 mortgage debt to Wife. The trial court calculated that the value of the gross marital estate including this "marital" value of the townhome and thus calculated the net value of the marital estate as "(-)$ 8,566.62" and awarded an equal division of the marital property and debt. As a result, Wife owed Husband a distributive award of $ 539.31. Wife timely appealed.
 

 II. Jurisdiction
 

 This Court has jurisdiction to review this equitable distribution order under North Carolina General Statute § 50-19.1 :
 

 Notwithstanding any other pending claims filed in the same action, a party may appeal from an order or judgment adjudicating a claim for absolute divorce, divorce
 
 *115
 
 from bed and board, child custody, child support, alimony, or equitable distribution
 
 *504
 
 if the order or judgment would otherwise be a final order or judgment within the meaning of G.S. 1A-1, Rule 54(b), but for the other pending claims in the same action.
 

 N.C. Gen. Stat. § 50-19.1
 
 (2017).
 

 III. Standard of Review
 

 The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary.
 

 The trial court's findings need only be supported by substantial evidence to be binding on appeal. We have defined substantial evidence as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
 

 Clark v. Dyer
 
 ,
 
 236 N.C. App. 9
 
 , 13,
 
 762 S.E.2d 838
 
 , 839 (2014).
 

 IV. Classification and Valuation of "Marital Component" of the Townhome
 

 On appeal, Wife challenges several of the trial court's findings of fact and related conclusions of law, all relating to the classification of the townhome.
 

 Upon application of a party for an equitable distribution, the trial court shall determine what is the marital property and shall provide for an equitable distribution of the marital property in accordance with the provisions of
 
 N.C. Gen. Stat. § 50-20
 
 . In so doing, the court must conduct a three-step analysis. First, the court must identify and classify all property as marital or separate based upon the evidence presented regarding the nature of the asset. Second, the court must determine the net value of the marital property as of the date of the parties' separation, with net value being market value, if any, less the amount of any encumbrances. Third, the court must distribute the marital property in an equitable manner.
 

 *116
 

 Chafin v. Chafin
 
 , --- N.C. App. ----, ----,
 
 791 S.E.2d 693
 
 , 698 (2016) (quotation marks, brackets, and ellipsis omitted).
 

 Wife challenges portions of the following findings and related conclusions of law:
 

 [4. b.] 7) Around 2000, Ms. Clemons purchased a townhome located [in] Concord for about $ 160,000.00. Just prior to the marriage, Ms. Clemons mortgaged the property. The mortgage was paid off, but the source of the funds are unknown. The parties mortgaged the property during the marriage. The parties agreed that the mortgage on the property at the date of separation was $ 90,000.00. The tax value on the townhome was $ 161,190.00 on March 20, 2006. There was no appraisal done on the home at or near the date of separation. Therefore, the marital portion is at least equal the marital debt of $ 90,000.
 

 ....
 

 [4.] g. On Schedule L, the parties agreed that those items, which includes the former marital residence, is the separate property of Ms. Clemons with the exception of the marital component noted above.
 

 ....
 

 [5. e.] 1) The former marital residence was owned by Ms. Clemons prior to the marriage. She mortgaged the property prior to the marriage to invest in Mr. Clemon's [sic] business. Later the home was mortgaged at least once more for $ 90,000.00. Limited documentation was available regarding the marital component.
 

 Wife challenges portions of these findings as unsupported by the evidence or contrary to the stipulations in the pretrial order.
 

 Finding of fact 4 (g) noting "the exception of the marital component noted above" is not supported by competent evidence in the record and is contrary to the parties' stipulation. The pretrial order does not include any mention of a "marital component" of the townhome or any issue of valuation of a "marital component" or valuation of an increase in value of the townhome during the marriage. And there was no evidence which could support classification or valuation of a "marital component." The parties stipulated only that
 
 *505
 
 the townhome was Wife's separate property, with a date of separation value of $ 186,000.00. Neither party introduced
 
 *117
 
 evidence needed to value a "marital component" of the townhome, most likely because they had stipulated that it was entirely separate.
 

 It is well-established that stipulations in a pretrial order are binding upon the parties and upon the trial court.
 
 See
 

 Crowder v. Jenkins
 
 ,
 
 11 N.C. App. 57
 
 , 63,
 
 180 S.E.2d 482
 
 , 486 (1971) ("[S]tipulations by the parties have the same effect as a jury finding; the jury is not required to find the existence of such facts; and nothing else appearing, they are conclusive and binding upon the parties and the trial judge."). "Accordingly, the effect of a stipulation by the parties withdraws a particular fact from the realm of dispute."
 
 Plomaritis v. Plomaritis
 
 ,
 
 222 N.C. App. 94
 
 , 101,
 
 730 S.E.2d 784
 
 , 789 (2012) (brackets and quotation marks omitted).
 

 In equitable distribution cases, stipulations in the pretrial order are intended to limit the evidence needed and to define the issues the trial court must decide.
 
 See
 

 id.
 
 at 106-07,
 
 730 S.E.2d at 792
 
 ("We also note that this is an equitable distribution case, where a pre-trial order including stipulations such as those in this case is required by
 
 N.C. Gen. Stat. § 50-21
 
 (d) and Local Rule 31.9. In equitable distribution cases, because of the requirements of statute and local rules, the stipulations are frequently quite extensive and precise and are specifically intended to limit the issues to be tried, and the same is true in this case. Neither party has cited, and we cannot find, any prior opinion by our Court in which a trial court has
 
 ex mero motu
 
 set aside a pre-trial order or a party's stipulations
 
 after
 
 completion of the trial upon the issues which the stipulations addressed." (citation omitted)). And as noted by the dissent, although it is possible for either the trial court or parties to set aside stipulations under certain conditions, none of those conditions are present here.
 

 The dissent takes Wife's counsel's brief comment about a "marital component" out of context and construes it as an agreement to assign a "marital component" to the value of the townhome, but this was not what her counsel was saying. Wife's counsel was actually arguing that the $ 90,000.00
 
 debt
 
 was entirely marital or had a marital component, not the townhome. At trial, Husband took the position that the $ 90,000.00 debt was
 
 not
 
 marital; Wife contended that it was marital.
 

 The "marital component" comment occurred during Husband's cross examination testimony about the $ 90,000.00 debt. Wife's counsel asked Husband:
 

 [Mr. Ferguson:] And this $ 90,000 loan or $ 90,000 debt various times was used to make improvements on the property.
 

 *118
 
 [Husband:] Well, --
 

 [Mr. Ferguson:] Yes or no?
 

 [Husband:]
 
 No,
 
 and I'll say -- the only reason I say that is that that was the balance on the mortgage at the time. The original mortgage that had been paid down at that time was, I think, 102,000 and the -- 'cause we'd been paying an accelerated amount on the principal. We were down to about 90,000.
 

 [Mr. Ferguson:]
 
 Well, whatever balance was owed on the town home on the date that you separated, the 90,000, no dispute as to marital debt?
 

 [Husband:] That is correct.
 

 [Mr. Ferguson:] And I believe your testimony was that the --
 

 MS. CAIN: Your Honor, I'm going to object to that question. That draws a legal conclusion, whether or not it's marital.
 

 THE COURT: Well, the whole pretrial order is based on that contention, stuff like marital and not marital and separate and --
 

 MS. CAIN:
 
 Well, yes, but that debt actually is on a schedule. We don't agree that it's marital.
 

 THE COURT: Okay. Well, I don't know how else you're going to ask him what he thinks the debt is on the date of separation to resolve the difference, then. He either agrees to it or he has an estimate of what it was.
 

 MS. CAIN: I don't --
 
 *506
 
 THE COURT: On the date of separation, what do you think the debt was on the home, the town home?
 

 [Husband]: I believe it was about 90,000.
 

 MS. CAIN:
 
 We're not disputing that; we're disputing that it's marital.
 

 MR. FERGUSON: The debt was --
 
 *119
 
 THE COURT: Well, they've agreed that the debt was incurred during the marriage and that it was paid down during the marriage to 90,000. That's the testimony thus far.
 

 MS. CAIN: Yes. I understand that. But it's also for property, assets and property, that she is keeping. Normally, the debt goes with the asset.
 

 THE COURT: I don't know that she's keeping it. I'll have to decide how the property's going to be divided
 
 unless she put that on A where they've agreed to that.
 

 (Emphasis added.)
 

 Neither the townhome nor the $ 90,000.00 debt was on Schedule A of the Pretrial order, which was "a list of marital property upon which there is an agreement by and between the parties hereto as to both value and distribution." The townhome was on Schedule L, "a list of the separate property, if any, of the [Wife] upon which there is an agreement and stipulation by and between the parties hereto as to both value and distribution." The townhome is listed on Schedule L as Wife's separate property, to be distributed to Wife. Wife's attorney then pointed this out:
 

 MR. FERGUSON: Her separate property, I believe it's listed under Schedule L.
 

 THE COURT: There's still a marital portion of it that's subject to be distributed.
 

 MR. FERGUSON: It's a marital component. No dispute.
 

 THE COURT: Uh-huh.
 

 MR. FERGUSON:
 
 That's what I'm trying to establish here.
 

 (Emphasis added.)
 

 Going back to the beginning of the line of questioning, Wife's attorney attempted to get Husband to agree that the $ 90,000.00
 
 debt
 
 was marital; Husband's counsel objected to the characterization of the debt as marital and noted that Husband did
 
 not
 
 agree that the debt was marital. Wife's counsel was certainly not trying to establish that the townhome or any portion of its value was marital, since this classification would be entirely opposed to Wife's interests. Instead, he pointed out to the trial court that the townhome was listed on Schedule L, as Wife's separate property, to be distributed to her. Thus, the "marital component" comment, read in context of the testimony and discussion in the trial
 
 *120
 
 court, is not a reference to classification of any portion of the value of the townhome. During the same discussion, Wife's counsel points out the stipulation in Schedule L of the pretrial order; he does not "invite error" or waive the stipulation. Nothing in the testimony, counsel's other statements to the court, or arguments indicates any intention to set aside any of the stipulations.
 
 [3]
 
 Nor can the trial court set aside a stipulation
 
 ex mero motu
 
 without prior notice to the parties:
 

 Just as a party requesting to set aside a stipulation would have to give notice to the opposing parties, and the opposing parties would have an opportunity for hearing upon the request, the trial court cannot own its own motion set aside a pre-trial order containing the parties' stipulations after the case has been tried in reliance upon that pre-trial order, "without giving the parties notice and an opportunity to be heard."
 

 Id. at
 

 108
 
 ,
 
 730 S.E.2d at 793
 
 (citation omitted).
 

 *507
 
 Here, even if the trial court intended to set aside the stipulation based upon Wife's counsel's comment about a "marital component" of the $ 90,000.00 debt, the parties would have needed notice so they could present additional evidence to value the "marital component." Counsel for both parties specifically noted the stipulations of the pretrial order and the trial court never gave any indication of an intent to set aside any of the stipulations. The trial court cannot value the "marital component" of an asset without competent evidence to support marital contribution to the value, and no such evidence was presented.
 

 In
 
 Lawrence v. Lawrence
 
 ,
 
 75 N.C. App. 592
 
 ,
 
 331 S.E.2d 186
 
 (1985), cited by the dissent, this Court noted that the marital component of separate property is valued based upon the
 
 active appreciation during the marriage
 
 :
 

 *121
 
 The Court held that increase in value of separate property due to active appreciation, which otherwise would have augmented the marital estate, is marital property.
 

 We conclude that the real property concerned herein must be characterized as part separate and part marital. It is clear the marital estate invested substantial labor and funds in improving the real property, therefore the marital estate is entitled to a proportionate return of its investment. That part of the real property consisting of the unimproved property owned by defendant prior to marriage should be characterized as separate and that part of the property consisting of the additions, alterations and repairs provided during marriage should be considered marital in nature. As the marital estate is entitled to a return of its investment, defendant because of her contribution of separate property is entitled to a return of, or reimbursement or credit for, that contribution.
 

 Id.
 
 at 595-96,
 
 331 S.E.2d at 188
 
 (citations omitted).
 

 The $ 90,000.00 balance of the debt secured by the townhome cannot equate to a "marital component" because it does not represent active appreciation from "additions, alterations and repairs provided
 
 during marriage
 
 ."
 
 Id.
 
 at 595,
 
 331 S.E.2d at 188
 
 (emphasis added). In fact, the $ 90,000.00 debt balance is just the opposite; this is the principal balance that Wife will be required to pay
 
 after
 
 the marriage, not a contribution
 
 during
 
 the marriage. Only the portion of debt paid during the marriage or funds expended on repairs or improvements to the townhome
 
 during
 
 the marriage could possibly be relevant to a "marital component" of the townhome. Neither party presented any evidence of the initial amount of the loans, payments made during the marriage, reduction of principal during the marriage, or any other factors which may be relevant to a "marital component."
 
 [4]
 

 Because the parties had stipulated that the townhome was Wife's separate property and that its value was $ 186,000.00, the trial court erred by classifying a portion of it as marital and attempting to value it based only upon the balance of a marital debt as of the date of separation. " 'Separate property' of a spouse as defined by G.S. 50-20(b)(2) is not subject to equitable distribution."
 
 Crumbley v. Crumbley
 
 ,
 
 70 N.C. App. 143
 
 , 145,
 
 318 S.E.2d 525
 
 , 526 (1984). In addition, on Schedule H
 

 *122
 
 of the pretrial order, Husband did not make any contention that there was "[a]ny direct contribution to an increase in the value of separate property which occurs during the course of the marriage." In fact, as discussed above, Husband contended the $ 90,000.00 debt was
 
 not
 
 marital and although he testified to some improvements to the property during the marriage, he also denied that this debt was used to improve the property:
 

 [Mr. Ferguson:] And this $ 90,000 loan or $ 90,000 debt various times was used to make improvements on the property.
 

 [Husband:] Well, --
 

 [Mr. Ferguson:] Yes or no?
 

 [Husband:]
 
 No,
 
 and I'll say --
 
 the only reason I say that is that that was the
 

 *508
 

 balance on the mortgage at the time
 
 . The original mortgage that had been paid down at that time was, I think, 102,000 and the -- 'cause we'd been paying an accelerated amount on the principal. We were down to about 90,000.
 

 (Emphasis added.)
 

 The trial court ignored the stipulations and attempted to rely on numbers in the record to create a "marital component" of the townhome. The trial court found, "The tax value on the townhome was $ 161,190.00 on March 20, 2006. There was no appraisal done on the home at or near the date of separation." These facts are correct, but the tax value of the townhome seven years prior to the date of valuation is irrelevant, and there was no appraisal of the townhome because the parties had
 
 stipulated
 
 to the value. As the trial court also found in finding 5 (e)(1), "Limited documentation was available regarding the marital component." This finding is correct; in fact, there was
 
 no
 
 documentation of a marital component, because neither party contended there was a marital component. Therefore, the trial court's findings of fact regarding the classification of a "marital component" in the townhome and its valuation are not supported by competent evidence.
 

 On appeal, Husband contends that he did present evidence of a "marital component" of the townhome based upon improvements made during the marriage. He acknowledges that the townhome was paid off when the parties married, but argues that during the marriage they incurred debt secured by the townhome and refinanced it more than once. But as noted above, his testimony on this point was contradictory
 
 *123
 
 at best, and he did not present any evidence of the amount of principal paid toward the debt during the marriage or active appreciation in the townhome during the marriage; the only evidence was the debt balance as of the date of separation. He also contends on appeal that "[m]ost of the funds were used to make improvements to the Townhome." Husband did testify at trial about several improvements to the townhome, although he did not present any evidence of the costs of any of the improvements or the sources of funds for each improvement. In addition, there was no evidence of the value of the townhome on the date of the marriage and thus no way for the trial court to determine what portion of an increase in value, if any, was passive appreciation based simply upon the passage of time and increase in overall property values.
 

 But more importantly, the trial court did not make any findings of fact that $ 90,000.00 debt was actually used to improve the townhome, and Husband did not cross-appeal. Therefore, the trial court's findings regarding the use of the funds are binding on this Court. The only finding regarding the use of a portion of the borrowed funds is:
 

 [4. d.] 1) ... On April 10, 2003, Ms. Clemons borrowed $ 43,130.81 against the property to invest in the trucking business owned by Mr. Clemons before the marriage. The truck was sold in 2007 to purchase the T800 truck.
 

 It was not disputed that the balance of the debt as of the date of separation, $ 90,000.00, was incurred during the marriage, and based upon the trial court's finding above, almost half of this amount was originally borrowed to invest in Husband's trucking business.
 
 [5]
 
 Beyond this finding, the trial court classified the $ 90,000.00 balance of the debt on the townhome as of the date of separation as marital debt. Wife did not challenge this finding on appeal, and Husband did not cross-appeal, so it is binding on this Court.
 
 See
 

 Clark
 
 ,
 
 236 N.C. App. at 14
 
 ,
 
 762 S.E.2d at 839
 
 .
 

 In finding of fact 6, the trial court listed the valuation and distribution of the marital property. This finding included the townhome, with a marital value of $ 90,000.00, and distributed it to Wife. This distribution of the townhome is in error because the townhome was Wife's separate property, and there was no "marital component" to include in calculation of the marital estate value or distribution. In finding of fact 7, the
 
 *509
 
 trial court listed the amount and distribution of several marital debts.
 
 *124
 
 The $ 90,000.00 debt on the townhome was distributed to Wife, and while Wife challenges this distribution in the heading of one of her arguments, she does not make any argument in her brief challenging this classification or distribution. This argument is deemed abandoned.
 
 See
 
 N.C. R. App. P. 28(a). Finding of fact 8 finds that "the gross marital estate is (-)$ 8,566.62" and divides the marital property and debt equally, resulting in a distributive award from Wife to Husband of $ 539.31, but this calculation erroneously includes the $ 90,000.00 value assigned to the "marital component" of the townhome.
 

 In the findings of fact addressing the distributional factors under
 
 N.C. Gen. Stat. § 50-20
 
 (c)(10), the trial court included findings regarding "[t]he difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest, intact, and free from any claim or interference by the other party." Under this factor, the trial court found:
 

 1) The former marital residence was owned by Ms. Clemons prior to the marriage. She mortgaged the property just prior to the marriage to invest in Mr. Clemon's [sic] business. Later the home was mortgaged at least once more for $ 90,000.00. Limited documentation was available regarding the marital component.
 

 2) Ms. Clemons resided in the former marital residence prior to the marriage. She continued to live in the home after the date of separation.
 

 Therefore, as part of its determination that an equal division would be equitable, the trial court considered Wife's townhome, the $ 90,000.00 value of the "marital component" of the townhome, that she had mortgaged it to invest in Husband's business, and that she lived in the townhome both before marriage and after separation. Because we must reverse the trial court's classification and valuation of the "marital component" of the townhome, we also reverse the trial court's division and distribution of the marital property and remand for entry of a new order classifying the townhome as Wife's separate property and equitably distributing the marital property and debt.
 
 [6]
 

 *125
 
 As in
 
 Turner v. Turner
 
 , by attempting to classify and value a "marital component" of the townhome contrary to the stipulations and evidence and then attempting an equitable result by dividing the net estate equally, "the court put the cart before the horse."
 
 64 N.C. App. 342
 
 , 346,
 
 307 S.E.2d 407
 
 , 409 (1983). The trial court may in its discretion do equity in the distribution, including an unequal distribution if supported by the factors under N.C. Gen. Stat § 50-20(c), but it may not use equity to classify or value marital property or debt. "Where the trial court decides that an unequal distribution is equitable, the court must exercise its discretion to decide how much weight to give each factor supporting an unequal distribution. A single distributional factor may support an unequal division."
 
 Mugno v. Mugno
 
 ,
 
 205 N.C. App. 273
 
 , 278,
 
 695 S.E.2d 495
 
 , 499 (2010) (citation omitted);
 
 see also
 

 Watson v. Watson
 
 , --- N.C. App. ----, ----,
 
 819 S.E.2d 595
 
 , 602 (2018).
 

 V. Conclusion
 

 For the foregoing reasons, we reverse and remand for the trial court to enter a new order classifying the townhome as Wife's separate property and distributing the marital property and debts. Since we have reversed the classification and valuation of the most valuable asset included in the marital estate, and the trial court considered this factor as part of its analysis of the distributional factors, we remand for the trial court to reconsider whether "an equal division is not equitable" considering the change in classification of the townhome and net value of the marital estate. N.C. Gen Stat. § 50-20(c) (2017). The determination of whether an equal division is not equitable is in the trial court's discretion, and it must exercise its
 
 *510
 
 discretion to consider the division in light of this opinion, so the trial court should make additional findings of fact as it deems appropriate as to the distributional factors under N. C. Gen. Stat. § 50-20(c).
 
 See
 

 White v. White
 
 ,
 
 312 N.C. 770
 
 , 777,
 
 324 S.E.2d 829
 
 , 833 (1985) ("It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion. A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." (citations omitted)).
 

 As the classification and valuation of only one asset was challenged on appeal, on remand the parties should not be permitted a "second bite at the apple" by presenting new evidence or argument as to the classification or valuation of marital or divisible property, but in the trial court's discretion, they may present additional evidence addressing the distributional factors under N.C. Gen. Stat. 50-20(c) since the trial court must consider those factors, including "[t]he income, property, and liabilities
 
 *126
 
 of each party at the time the division of property is to become effective."
 
 N.C. Gen. Stat. § 50-20
 
 (c)(1).
 

 REVERSED AND REMANDED.
 

 Judge DILLON concurs.
 

 Judge BERGER dissents in separate opinion.
 

 BERGER, Judge, dissenting in separate opinion.
 

 For the reasons stated herein, I respectfully dissent.
 

 The parties stipulated in the pretrial order that the townhome was entirely Wife's separate property, valued at $ 186,000. Nevertheless, the trial court classified the townhome partially as Wife's separate property and partially marital property because there was active appreciation in the townhome's value during the parties' marriage. The trial court found that the "marital portion" of the townhome was "at least equal to the marital debt of $ 90,000." Wife contends that the trial court erred by setting aside the parties' stipulation that the townhome was entirely Wife's separate property in order to find that the townhome was subject to a $ 90,000 "marital component."
 

 However, Wife waived appellate review of this issue by inviting any alleged error. "A party may not complain of action which he induced."
 
 Frugard v. Pritchard
 
 ,
 
 338 N.C. 508
 
 , 512,
 
 450 S.E.2d 744
 
 , 746 (1994). Invited error is
 

 a legal error that is not a cause for complaint because the error occurred through the fault of the party now complaining. The evidentiary scholars have provided similar definitions; e.g., the party who induces an error can't take advantage of it on appeal, or more colloquially, you can't complain about a result you caused.
 

 Romulus v. Romulus
 
 ,
 
 215 N.C. App. 495
 
 , 528,
 
 715 S.E.2d 308
 
 , 329 (2011) (citation and quotation marks omitted).
 

 Here, the trial court remarked during the trial that there was a "marital portion" of the townhome that was "subject to be distributed." The trial court was not, as the majority contends, addressing the marital debt, but clearly discussing the asset.
 

 *127
 
 THE COURT: I'll have to decide how the
 
 property's
 
 going to be divided unless she put that on [Schedule] A where they've agreed to that.
 

 [Wife's Attorney]: Her separate property, I believe it's listed under Schedule L.
 

 THE COURT:
 
 There's still a marital portion of it that's subject to be distributed.
 

 [Wife's Attorney]:
 
 It's a marital component. No dispute.
 

 THE COURT: Uh-huh.
 

 (Emphasis added.)
 

 By responding that "It's a marital component. No dispute," Wife invited the error, if any. Because any purported error that may have occurred at trial "occurred through the fault of [Wife],"
 
 Romulus
 
 ,
 
 215 N.C. App. at 528
 
 ,
 
 715 S.E.2d at 329
 
 , she has waived appellate review of this issue.
 

 Even if Wife had not waived appellate review, the above exchange reflected Wife's consent for the trial court to set aside the parties' stipulation that the townhome was entirely Wife's separate property. Generally,
 
 *511
 
 "[a]dmissions in the pleadings and stipulations by the parties have the same effect as a jury finding; the jury is not required to find the existence of such facts; and nothing else appearing, they are conclusive and binding upon the parties and the trial judge."
 
 Crowder v. Jenkins
 
 ,
 
 11 N.C. App. 57
 
 , 63,
 
 180 S.E.2d 482
 
 , 486 (1971) (citation omitted). However, "[s]tipulations may be set aside in certain circumstances."
 
 Plomaritis v. Plomaritis
 
 ,
 
 222 N.C. App. 94
 
 , 106,
 
 730 S.E.2d 784
 
 , 792 (2012).
 

 It is generally recognized that it is within the discretion of the court to set aside a stipulation of the parties relating to the conduct of a pending cause, where enforcement would result in injury to one of the parties and the other party would not be materially prejudiced by its being set aside. A stipulation entered into under a mistake as to a material fact concerning the ascertainment of which there has been reasonable diligence exercised is the proper subject for relief. Other proper justifications for setting aside a stipulation include: misrepresentations as to material facts, undue influence, collusion, duress, fraud, and inadvertence.
 

 *128
 

 Lowery v. Locklear Const
 
 .,
 
 132 N.C. App. 510
 
 , 514,
 
 512 S.E.2d 477
 
 , 479 (1999) (citations and quotation marks omitted).
 

 Although it may be appropriate for a trial court on its own motion to set aside a parties' stipulation for one of the reasons stated in
 
 Lowery
 
 or to prevent manifest injustice, there are limits to the court's discretion to set aside a stipulation. First, Rule 16(a)(7) [of the North Carolina Rules of Civil Procedure] itself states that a stipulation may be "modified
 
 at the trial
 
 to prevent manifest injustice." N.C. Gen. Stat. § 1A-1, Rule 16(a) (emphasis added). Modification of a stipulation
 
 at the trial
 
 gives all parties immediate notice of the modification and allows the parties the opportunity to present additional evidence which may be required based upon the elimination of the stipulation.
 

 Plomaritis
 
 ,
 
 222 N.C. App. at 107
 
 ,
 
 730 S.E.2d at 793
 
 (emphasis in original).
 

 Here, the majority opinion implies that the trial court made an
 
 ex mero motu
 
 post-trial modification to the parties' stipulation. However, to the extent there was any modification, it was made
 
 at trial
 
 and with Wife's consent. The majority opinion's failure to make a distinction between stipulation modifications that occur during trial and post-trial is essential because it relates to the parties' right to notice and opportunity to be heard.
 

 The trial court certainly could have found that failure to include a $ 90,000 asset provided sufficient cause to modify the stipulation.
 
 [7]
 
 Given the evidence in the record, the trial court correctly concluded that the townhome should have been classified and distributed as part separate and part marital property due to its active appreciation during the marriage.
 
 See
 

 Lawrence v. Lawrence
 
 ,
 
 75 N.C. App. 592
 
 , 595,
 
 331 S.E.2d 186
 
 , 188 (1985) ("Part of the real property consisting of the unimproved property owned by defendant prior to marriage should be characterized as separate and that part of the property consisting of the additions,
 
 *129
 
 alterations and repairs provided during marriage should be considered marital in nature."). Moreover, the trial court immediately notified the parties during the trial that it believed the townhome was subject to a marital component of active appreciation.
 

 In addition, one could argue that there was evidence that could support the trial court's valuation of the "marital portion" of the townhome. Prior to the marriage, Wife purchased and paid off the mortgage on the townhome. During the marriage, the parties lived in the townhome and took out multiple lines of credit against the equity on the townhome. Defendant testified that the parties spent most of the loan proceeds to remodel
 
 *512
 
 and make improvements to the townhome. Wife did not dispute this testimony.
 

 Admittedly, the trial court's findings as to valuation of the townhome are limited. But, evidence in the record demonstrates that there was active appreciation of separate property. Additional findings of fact from the trial court could resolve this issue, as could additional evidence if the trial court deems necessary. This Court should not hamstring a trial court by simply instructing it to "get it over," instead of getting it right.
 

 [1]
 

 Our record does not indicate the status of the postseparation and alimony claims, but those are not relevant to this appeal.
 

 [2]
 

 It appears that $ 186,000.00 was actually the
 
 gross
 
 value of the townhome, since the parties agreed that the $ 90,000.00 debt was secured by the townhome, so the
 
 net
 
 value would therefore be $ 96,000.00, but the exact value does not change our analysis on appeal.
 

 [3]
 

 Our dissenting colleague notes that "[t]he trial court certainly could have found that failure to include a $ 90,000 asset provided sufficient cause to modify the stipulation." But the $ 90,000.00 is the balance of the debt owed
 
 on the date of separation
 
 and will be paid by Wife after the marriage; it is not a "marital asset." Nor did the parties overlook the $ 90,000.00 on the pretrial order. Both attorneys pointed out the pretrial order's stipulations to the trial court during the colloquy during Husband's testimony. It was characterized as a debt, the parties agreed on the value, and they disagreed on its classification as a marital or separate debt. The trial court classified it as marital debt, and this classification is not challenged on appeal.
 

 [4]
 

 Husband testified only to the amounts of monthly payments and that the loan was refinanced several times.
 

 [5]
 

 By the time the parties separated, Husband's trucking business was defunct, so it was not an asset considered in equitable distribution.
 

 [6]
 

 We note that the townhome was by far the largest "marital" asset, and the net value of the marital estate without the value of the townhome would be ($ 98,566.62). This would result in Husband being required to
 
 pay
 
 Wife $ 44,460.69 to equalize the distribution, a result the trial court may have deemed inequitable.
 

 [7]
 

 The majority's footnote 3 is curious given the very straightforward language contained herein. The trial court found that the "marital portion" of the townhome was "at least equal to the marital debt of $ 90,000." The trial court valued this
 
 asset
 
 , the active appreciation of the townhome, at $ 90,000. While the trial court's valuation of both the marital debt on the townhome and the active appreciation in the townhome's value at $ 90,000 has apparently caused some confusion, this dissent does not address in any way, shape, or fashion the trial court's valuation or distribution of the $ 90,000
 
 debt
 
 owed on that asset.